UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6149-CR-ZLOCH(s)



UNITED STATES OF AMERICA,

    Plaintiff,

vs.

                    MOTION TO COMPEL DISCOVERY
                    AND REQUEST FOR SPECIFIC *KYLES*,
                    *BRADY*, AND *GIGLIO* INFORMATION

EDGAR QUIMBAYO,

    Defendant.

_____/

COMES NOW the Defendant, EDGAR QUIMBAYO, by and through his undersigned counsel, and pursuant to the dictates of *Kyles v. Whitley*, 115 S.Ct. 155 (1995), *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 971 (1976), *United States v Bagley*, 473 U.S. 667 (1985), and *United States v. Giglio*, 405 U.S. 150 (1973) and Fed. R. Crim. P. 16, respectfully moves for an entry of an order requiring the government to disclose and provide the following specific information and materials known or that with the exercise of due diligence should be known to the government. This information is favorable to the Defendant on the issues of guilt or punishment, including impeachment information and other material and evidence tending to discredit the government's witness, in addition to any other matters known to the government that may be exculpatory or otherwise favorable to the defendant.

The defense has been provided with copies of taped undercover conversations purportedly recorded by an DEA informant. Defendant believes this informant is Gustavo Adolfo Cure who has been a Government informant for some time and that he will be a

Government witness at trial. In addition it is expected that another cooperating witness may be testifying in exchange for leniency.

The Standard Discovery Order, paragraphs C and D ordered the Government to deliver Brady material and payment, promises, leniency, preferential treatment, or other inducements within the scope of *Giglio v. United States* 405 U.S. 150 (1972). The Government filed its response on or about August 9, 2000. The information Defendant requests herein was not included in that response. The Defendant believes that said material exists with respect to Cure and/or the other cooperating witness and further believes that he is entitled to be provided with that information in a timely fashion.

The following documents and information regarding Cure and any cooperating witnesses are requested:

A.   The names of all cooperating witnesses.

B.   The case numbers and names of the prosecutions in which Cure and/or the cooperating witness have previously been utilized as a witness.

C.   The case names and numbers of any trials or evidentiary hearings at which Mr. Cure and/or the cooperating witness have testified concerning his or their own prior criminal activity, payments or rewards provided them by the government, efforts made to induce others to participate in criminal activity, or other purported law enforcement related matters.

D.   Any ledger, sheet, or other document which details the sums of money paid Mr. Cure and/or any other cooperating witness, and his or their family in this and other cases in which they assisted the government and the purpose of each such payment.

E.   Any information, whether or not memorialized in a written plea agreement, memorandum, agent's report or other writing, regarding promises of immunity, leniency,

2

preferential treatment or other inducements made to Mr. Cure or any family member, friend or associate of Mr. Cure, and the same for the other cooperating witness, in exchange for his or their cooperating, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, promises or expectancies regarding payment for expenses or testimony for any award or reward. In addition to information regarding payment, promise of immunity, leniency, preferential treatment or other inducements made to the government witnesses, any records or information regarding payments promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend or associate of Mr. Cure or prospective witnesses in exchange for said witness cooperation.

F.  Any report, document or information which details any criminal activities of Mr. Cure and/or the cooperating witness which were undertaken by them without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute;

G.  FBI rap sheet, NCIC printout, NADDIS, EPIC, NLETS, ATS, TECS, and any other records available to the government reflecting any arrest, conviction and investigative history of Mr. Cure or cooperating witnesses including warrants of arrest for drug smuggling from the Republic of Colombia and Bolivia.

H.  Information concerning prior misconduct by Mr. Cure and/or the cooperating witness in the performance of his role as an informant including; any prior refusal to testify or to assist the government; any prior allegation that Mr. Cure and/or the cooperating witness entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of Mr. Cure and/or the cooperating witness by any law enforcement agency.

I.  Information concerning misconduct by Mr. Cure and/or the cooperating witness other than in his role as an cooperating witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of Mr. Cure, such as uncharged criminal conduct or fraud;

J.  All information, records and transcripts which in any way indicate or reveal that Mr. Cure and/or the cooperating witness, in connection with this or any other case, has provided untruthful, false misleading, incomplete, or inaccurate information or testimony to:

    1.  Any state or federal law enforcement officer or agency,

    2.  Any state or federal grand jury,

    3.  Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding:

K.  Federal income tax returns for years in which Mr. Cure and/or the cooperating witness has worked as an informant for the Government.

L.  Information reflecting the nature and extent of assets obtained by Mr. Cure in connection with his informant activities and the same with respect to any cooperating witness and his illegal actions.

M.  Any "RECORDS" maintained by law enforcement agencies relating to Mr. Cure and/or the cooperating witness, including records that the witness was

    1.  Given a code name,
    2.  Given assumed/false identity,
    3.  Reasons for cooperation,
    4.  Given a polygraph exam,
    5.  Briefed on entrapment.
    6.  Contracts executed with any law enforcement agency,
    7.  Any release forms executed by the witness,
    8.  Records revealing the witness was advised to pay Federal Income Tax,
    9.  Records that he could not violate the law,
    10. Records which require him to protect his false identity,
    11  Records that the witness cannot use any illegal drugs,
    12. Records that the witness consented to recording any conversation with any

        party,
13. Contingency Fee Agreement,
14. Fingerprint records.

N.     Any government agency files or other information revealing matters relevant to the Mr. Cure's and/or the cooperating witness' credibility, mental or physical health, narcotic or alcohol use, or any other dependency;

O.     All information and records indicating that Mr. Cure and/or the cooperating witness (1) may have used cocaine, marijuana, or other controlled substances, used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any substance abuse problem (including alcohol) at any time within the past five years.

P.     Records of the length of time Mr. Cure and/or the cooperating witness have been cooperating with DEA and/or other agencies of the United States Government.

Q.     DEA-6 report of a debriefing of informant dated 6/20/00 relating to Defendant's participation in the crimes charged.

R.     Any tape recordings of a call from Defendant's wife Vivian Vaca to Margate Police Department reporting Defendant's car stolen

## MEMORANDUM OF LAW

The Courts have long recognized the dangers that accompany the use of informants in criminal investigations and prosecutions. Those dangers were detailed in *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).

> [T]he use of informants to investigate and prosecute persons is fraught with peril." ... "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the court to prevent them from falsely

> accusing the innocent, from manufacturing evidence against those
> under suspicion of crime, and from lying under oath in the courtroom.
>
> ..........
>
> A prosecutor who does not appreciate the perils of using
> rewarded criminals as witnesses risks compromising the truth-seeking
> mission of our criminal justice system .... Because the government
> decided whether and when to use such witnesses, and what, if
> anything, to give them for their service, the government stands
> uniquely positioned to guard against perfidy. By its action the
> government can either contribute to or eliminate the problem.
> Accordingly, we expect prosecutors and investigators to take all
> reasonable measures to safeguard the system against treachery. *Id.* at
> 331-334

It is against this background that this specific Brady request is made as it is axiomatic that evidence which is material either to the guilt or punishment of the defendant must be disclosed to the defense in a timely manner, *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence that will "play a role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" must be provided by the government. *United States v. Lloyd,* 992, F2d. 348, 351 (D. C. Cir. 1993) *See also United States v. Bagley,* 473 U.S. 667 (1985).

"Taken together, this group of constitutional privileges delivers exculpatory evidence into the hand of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of the criminal justice system." *California v. Trombetta,* 467 U.S. 858, 867 (1984). If this material evidence exists in the hands of the government or an agent of the State, the failure to disclose this evidence is a violation of the precepts of *Brady v. Maryland, supra;* See also, *Kyles v. Whitney, 155* S.Ct. 155, 1567 (1995). "In fact, an individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.*

6

### PRIOR UTILIZATION OF AND TESTIMONY BY MR. CURE AND/OR THE COOPERATING WITNESS

Such evidence is discoverable, pursuant to *Giglio v. United States, supra* and *United States v. Bagley*, 473 U.S. 667 (1985), to aid in the impeachment of a witness. Similarly, the prior testimony of the informant on themes material to his service as an informant should be disclosed where the defense proposes to examine the informant as to those themes at trial. *Johnson v. Brewer*, 521 F.2d at 563. In *United States v. Cohen*, 888 F.2d 770, 776-777 (11th Cir. 1989), the Eleventh Circuit recognized the importance of such evidence, reversing the conviction where the trial court had excluded evidence offered under Fed. R. Evid. 404(b) that the primary informant had previously concocted and managed a fraudulent scheme.

In *Mesarosh v. United States*, 352 U.S. 1 (1956), the Supreme Court reversed the defendant's conviction and remanded for a new trial to allow the defendant to present previously undisclosed evidence that the government's key witness testified falsely in similar, but unrelated proceedings. The Eleventh Circuit reaffirmed the vitality of the *Mesorosh* decision in *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990), holding that the government may not withhold evidence that a witness has made prior false statements in a matter within the jurisdiction of a federal agency. *Cf. United States v. Williams*, 500 F.2d 105, 108 (9th Cir. 1974) (granting a new trial under *Mesorosh* to allow defendant to present to the jury evidence of a witness' previous false statements in other proceedings).

### PREFERENTIAL TREATMENT GIVEN AND THREATS MADE TO CURE AND/OR THE COOPERATING WITNESS INCLUDING MONIES PAID AND PROMISES OF FINANCIAL AWARD

The defendant seeks a full record from all law enforcement agencies, of all considerations given to Mr. Cure and his family, and the same for any cooperating witness, as a result of his cooperation in this case as well as any other case in which they have provided services.

Such detailed information and records are needed to demonstrate the motive of the witness and are discoverable. *Giglio v. United States, supra; United States v. Williams,* 954 F.2d 668 (11th Cir. 1992).

The witness' motive to testify in favor of one party and against another is a matter open to discovery and introduction into evidence. Fed. R. Evid. 608. The Eleventh Circuit's Pattern Criminal Jury Instructions highlight the importance of such evidence in judging the credibility of the informant or witness.

> For example, a paid informer, or a witness who has been promised he will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his own case, may have reason to make a false statement because he wants to strike a good bargain with the government

11th Circuit Pattern Criminal Jury Instructions, Special instruction 1.1.

Evidence that the government has threatened a potential witness to obtain the witness' cooperation, is admissible, and may demonstrate unconstitutional interference with the defendant's right to free access to witnesses. *United States v. Hendricksen,* 564 F.2d 197, 198 (5th Cir. 1977); *United States v. Heller,* 830 F.2d 150, 154 (11th Cir. 1987).

The Defendant further seeks information as to threats or promises made to the witness or his family to motivate his cooperation. The threats/benefits evaluation is not limited to the informant alone. *United States v. Partin,* 493 F2d 750, 757 (5th Cir. 1974). Such *Giglio* Material is discoverable to allow defense counsel to establish possible bias or hostility of the informant. It is proper impeachment to question a cooperating witness about the dismissal of charges against

8

him or other preferential treatment given to his family. *United States v. Nickerson*, 669 F.2d 1016, 1018 (5th Cir. 1982).

Similarly, unconsummated promises of financial or other awards or benefits are discoverable as to the informant including any Contingency Fee Agreement. *United States v. Cuellar*, 96 F. 3d 1179 (9th Cir. 1996); *United States v. Friedman*, 854 F.2d 535, 563 (2nd Cir. 1988). (Holding that the effect of a Contingency Fee Agreement on the witness' credibility is an issue for the jury). Thus, where the informant harbors an expectation of a future financial award for his services in obtaining a conviction, such evidence is crucially important to the defense. *United States v. Williams*, 954 F.2d 668, 672. (11th Cir. 1992). Defendant seeks disclosure of any promise, formal or informal, that would lead the informant to have an expectation of an award in the instant case.[1]

### ARREST AND CONVICTION RECORD, UNAUTHORIZED CRIMINAL ACTIVITY AND OTHER MISCONDUCT

The informant's and/or cooperating witness' history and pattern of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals. Such evidence "might easily extend beyond that of mere impeachment." *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990). In *Espinosa-Hernandez*, the Eleventh Circuit reversed the district court's failure to grant full discovery as to an undercover agent's misconduct relating to the handling of informants. 918 F.2d at 914; *Cf. Haber v. Wainwright*, 756 F.2d 1520, 1523 (11th Cir. 1985) (prior criminal conduct relevant where witness may have been promised immunity).

---

[1] 28 U.S.C. 524 and 19U.S.C. § 1619 allows the government at the government's discretion to pay informants, often referred to as moiety, 15% of the value of any property forfeited to the government or $250,000.00, for each such forfeiture. There is no prohibition paying more than $250,000.00, provided payments involve more than one case.

9

Along the same line, the courts have held evidence of the unreliability of an informant witness to be discoverable and highly relevant information. For example, information regarding prior or contemporaneous perjury or bizarre testimony of an informant would be discoverable. *United States v. Mesarosh, supra.*

### FEDERAL INCOME TAX RETURNS

The defendant specially requests the Federal Income Tax records of the cooperating witness for any year in which any law enforcement agency provided compensation of any type. *United States v. Shaffer*, 789 F.2d 682, 6880689 (9th Cir. 1986).

Federal law enforcement agencies require informants to pay federal income taxes on monies received. See Drug Enforcement Manual, ("DEA") chapter 66, Section 6612.31

> The controlling Special Agent will advise all cooperating individuals that they must file Federal income tax returns to include all payments, awards and rewards paid to them by DEA. In additional, the controlling Special Agent will advise the cooperating individual that all payments must be reported as "other income" on their Federal income tax return, and it will be their responsibility to obtain receipts and other supporting documentation to offset the legitimate expenses from income for possible audit by the Internal Revenue Service. Agents will advise all cooperating individuals that their liability is a matter strictly between them and the Internal Revenue Service. A statement attesting to this policy will be documented on the back of the Dea-202. Special Agents will remind cooperating individuals of this policy when any payment is made.

The defendant is entitled to these records since he has a good faith basis to believe that the informant has not paid the proper taxes or has misrepresented his earnings in violation of federal law.

### ASSETS OBTAINED BY AN INFORMANT

The discovery of any and all assets obtained by Mr. Cure through his informant activity is sought as verification of the extent of his prior criminal activity and his motive to protect such

10

assets from forfeiture and taxes. The same is true with respect to any cooperating witness and his illegal activity. Further, it is submitted that this witness may have committed perjury by failing to report income from criminal activity on his income tax returns. Such perjury is relevant in the consideration of any evidence presented by the informant. *United States v. Shearer*, 794 F.2d 1545, 1551 (11th Cir. 1986), Seventh Circuit Pattern Criminal Instruction 3.21 (modified).

In *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1465 (9th Cir. 1992), the Court held that the failure to disclose an internal DEA memorandum regarding the informant's conduct which impeached the informant's credibility was reversible error. Thus the Court required the disclosure of the memorandum pursuant to the dictates of *Brady*, *Id*. at 1461.

"An [AUSA] using a witness with an impeachable past has a constitutionally derived duty to search for and produce impeachment information requested regarding a witness." *United States v. Osorio*, 929 F.2d 53, 760 (1st Cir. 1991), (citing *Giglio*)

### REVIEW OF GOVERNMENT AGENT(S) AND LAW ENFORCEMENT PERSONNEL FILES

The Government has a duty examine the personnel files of <u>all</u> Federal agents and the files of any local, state or municipal law enforcement officer who will testify and <u>must</u> disclose information favorable to the defense for impeachment purposes. *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) citing *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984). "In the event that the Government is uncertain about the materiality of information in it's possession, it may submit the information to the trial Court for an in camera inspection and evaluation…" *Id.* at 1467-68. The Government has a duty to examine the personnel files upon a defendant's request for production. *See Id.* At 1467. Absent such an examination, it cannot ordinarily determine whether it is obligated to turn over the files. *Henthorn*, at 31.

Additionally, in *United States v. Deutsch,* 475 F.2d 55, 58 (5th Cir. 1973), the Court compelled disclosure of a postal employee's personnel file where these records revealed the government witness, may have had disciplinary problems. Similarly, in *United States v. Garrett,* 542 F.2d 23, 26 (6th Cir. 1976), the Court reversed the defendant's conviction where the District Court foreclosed discovery and cross examination as to the personnel records of the law enforcement officer. This government witness acted in an undercover capacity. His disciplinary records evidenced suspected use of narcotics and failure to submit to a urinalysis. The Court noted that such evidence was relevant because the undercover agent "might well have looked upon a successful prosecution of [the defendant] as a means of having his [own] suspension [from duty] lifted." *Id.*

In *United States v. Osorio,* 929 F.2d 753 (1st Cir. 1991), the Court held that a prosecutor charged with discovery obligations cannot avoid finding out what ' the government' knows [about the witness] simply by declining to make reasonable inquiry of those in a position to have relevant knowledge . . .   The government, as represented by its prosecutors in court, is under a duty of inquiry regarding information concerning the criminal past of its cooperating witnesses." *Id.* At 760.

The government has an institutional responsibility to canvass all sources relied upon in it's prosecution including other law enforcement agencies. *Kyles v. Whitley* 115 S.Ct. 155 (1995). Once placed on notice the government has a responsibility to search all the record depositories of cooperating law enforcement agencies to obtain information for discovery purposes. *United States v. Brooks,* 966 F.2d 1500, 1503 (D.C. Cir. 1992).

12

### RECORD OF ARRESTS AND MISCONDUCT

Pursuant to Fed. R. Evid. 608(b) a witness may be cross-examined as to specific instances of conduct "concerning the witness' character for truthfulness or untruthfulness." Thus, some courts have held that in certain circumstances a witness may be questioned regarding prior arrests, which have not led to a conviction. *United States v. Croucher*, 535 F.2d 1042, 1045 (5th Cir. 1976) (informant witness' full arrest record was relevant to demonstrate a possible motive to strike a good bargain with the government.

Similarly, uncharged misconduct of a witness is fair game for impeachment on cross-examination. *United States v. Ray*, 731 F.2d 1361, 1364-65 (9th Cir. 1984) (reversible error to refuse to permit cross-examination of a government witness as to alleged post-plea drug activities); *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990) (government witness' misconduct bears directly on credibility); *United States v. Cohen*, 888 F.2d 770, 776-777 (11th Cir. 1989) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) that prosecution witness had previously concocted and managed a fraudulent scheme); *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) to show that informant had previously entrapped other defendants).

WHEREFORE, the Defendant prays that this Court issue an Order compelling timely disclosure of *Brady, Kyles, Giglio* materials as requested herein and as ordered in the Standing Discovery Order.

Respectfully submitted,

IRWIN G. LICHTER, P.A.
Attorney for Defendant
321 N.E. 26th Street
Miami, Florida 33137
(305) 573-0551
Fla. Bar No. 147988

by: _____
IRWIN G. LICHTER, ESQ.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this  28  day of September, 2000 to Assistant United States Attorney Terrence Thompson, 500 E. Broward Boulevard, Suite 700, Ft. Lauderdale, FL  33394-3002.

_____
IRWIN G. LICHTER, ESQ.

14